## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JULIE O'NEILL,                          Case No. 1:23-cv-410
        Plaintiff,                      McFarland, J.
                                        Litkovitz, M.J.


        vs.


SCRIPPS MEDIA, INC., d/b/a              **REPORT AND**
WCPO-TV, et al.,                        **RECOMMENDATION**
        Defendants.

Plaintiff Julie O'Neill brings this employment discrimination action alleging, *inter alia*,

age and sex discrimination claims arising during her employment with Scripps Media, Inc., d/b/a

WCPO-TV (WCPO) in the Fall of 2022. Defendants WCPO and the E.W. Scripps Company

(E.W. Scripps) filed a partial motion to dismiss plaintiff's amended complaint (Doc. 15), which

is before the Court. Plaintiff filed a response (Doc. 20), and defendants filed a reply (Doc. 21).

### I.    Background[1]

Plaintiff is a former anchor of WCPO's morning news program. WCPO hired plaintiff in

1995 and promoted her to the morning anchor role in 1998, which plaintiff held until 2002.

Plaintiff returned to the morning anchor role in 2018. During her career with WCPO, her

performance reviews were largely positive.

In January 2022, WCPO hired Barry Fulmer as News Director. At that time, "it was

expected" based on her previous performance and longevity with WCPO that plaintiff would be

assigned to cover the Cincinnati Bengals' "March to the Playoffs" and—ultimately—the Super

---

[1] The following is derived from plaintiff's amended complaint (Doc. 10) and documents attached thereto ("Final Warning for Unacceptable Conduct" (Doc. 10-1); EEOC charge (Doc. 10-2); EEOC Right to Sue letter (Doc. 10-3); and letter on behalf of plaintiff to the Ohio Civil Rights Commission requesting a Right to Sue letter (Doc. 10-4)). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Bowl on site (i.e., in Nashville, TN; Kansas City, MO; and Los Angeles, CA).  (Doc. 10, PAGEID 69-70, ¶ 9).  Plaintiff explicitly requested this assignment from Mr. Fulmer because she had followed the Bengals during her 27-year career with WCPO and was a fellow Louisiana State University alum with quarterback Joe Burrow.  WCPO management and Mr. Fulmer did not assign plaintiff this coverage—assigning it, instead, to her male and significantly younger co-anchor, who plaintiff refers to as "AW."  Though AW had far less broadcast and WCPO news experience than plaintiff, he had anywhere from a $5,000.00 to $11,000.00 higher salary than plaintiff from 2020-2022.  Plaintiff repeatedly requested this coverage assignment to no avail.

On February 7, 2022, Mr. Fulmer told plaintiff that AW would cover the Super Bowl on-site.  Plaintiff told Mr. Fulmer that this "made no sense. . . ."  (*Id.* at PAGEID 71, ¶ 15).  Mr. Fulmer told plaintiff that the decision reflected a desire to "keep the same [on-site coverage] team in place" from prior playoff games.  Plaintiff knew that two other anchors, who had *not* covered prior games, were being sent to the Super Bowl—prompting plaintiff to complain to Mr. Fulmer: "am I the wrong age, gender, or color[?]"  (*Id.*, ¶ 16).  Mr. Fulmer frowned, rolled his eyes, and did not otherwise respond.  When coworkers asked plaintiff why she had not been assigned the on-site coverage, she answered that it "must have been because of her age, gender, or color."  (*Id.*, at PAGEID 72, ¶ 17).  Eventually, having heard plaintiff's complaints repeated via other employees, Mr. Fulmer confronted plaintiff.  Plaintiff explained that she simply was responding to her coworkers' questions.  Throughout this period, plaintiff maintained excellent work performance.

Later in February 2022, plaintiff contacted her union representative, Tim Williams, about the Bengals on-site coverage decision.  Mr. Williams suggested that he speak with Jeff Brogan, WCPO's General Manager.  According to Mr. Brogan, WPCO had a business reason for the on-

site coverage decision, saying: "[Plaintiff] and Tanya [O'Rourke] are the faces of the station.  I can't have both of them gone at the same time."  (*Id.* at PAGEID 73, ¶ 20).  Mr. Williams communicated the gist of his conversation with Mr. Brogan to plaintiff.

On March 30, 2022, plaintiff had a quarterly evaluation and received the first criticisms of her performance in her 27-year career at WCPO, which she "believed . . . were false."  (*Id.* at PAGEID 74, ¶ 22).  These criticisms included plaintiff's on-air references to her disappointment over the Bengals on-site coverage assignment; laughing too much on the air; awkward tosses[2] to weather; not being in the studio before and during the newscast; use of verbal crutches; and sub-optimal chemistry with her co-anchor.  Plaintiff alleges these criticisms were false.  (*Id.*).

On August 12, 2022, plaintiff attended a meeting with Mr. Fulmer, Mr. Williams, and Human Resources (HR) Director Katie Rawe.  Mr. Fulmer stated that he had not observed improvement since plaintiff's March 2022 performance evaluation—noting that plaintiff needed to stay on script, eliminate on-air stumbling in her speech, stop sleeping during work hours, and improve her weather tosses.  Plaintiff responded that any stumbles resulted from inadequate scripts, and short naps were commonplace among many WCPO employees, given their unusual schedules.  After the meeting, Mr. Williams shared his belief that a meeting with HR was unprecedented for the type of criticisms addressed with plaintiff.  Plaintiff's coworkers remarked that any stumbles that she may have made were not noticeable, and her performance concerning these criticisms was on par with that of substantially younger, male news anchors.

---

[2] A "toss" is industry-defined as "[w]hen an anchor or reporter turns over a portion of the show to another anchor or reporter."  *Common Broadcast Journalism Terms & Slang*, NEW YORK FILM ACADEMY (February 19, 2016), *https://www.nyfa.edu/student-resources/the-ultimate-list-of-broadcast-journalism-terms/#:~:text=Toss%20%E2%80%93%20When%20an%20anchor%20or,script%20in%20a%20news%20package* [https://perma.cc/X5R5-9Y3T ].

On September 2, 2022, plaintiff mentioned COVID-19 while welcoming the meteorologist back from time off. The meteorologist had approximately 50,000 Facebook followers, and she had previously posted about her experience with COVID-19 on social media. During the next commercial break, the meteorologist complained about the COVID-19 reference to assistant news director Andy Delancey. Mr. Delancey then told plaintiff and AW to only reference medical conditions if previously cleared with the affected individual. Plaintiff responded that she only did so because the meteorologist had already publicly shared her experience with COVID-19 on social media. On September 8, 2022, Mr. Fulmer talked to both plaintiff and AW about the incident but did not reference any resulting discipline.

On September 12, 2022, Mr. Brogan texted plaintiff to inform her that she would not anchor the morning show the following day and would instead report to his office regarding her prior conversations with Mr. Fulmer and the HR director Rawe. On September 13, 2022, plaintiff reported to the meeting with Mr. Brogan, Ms. Rawe, and Mr. Williams in attendance. Mr. Brogan presented plaintiff with and read a "Final Warning" letter (Doc. 10-1). Plaintiff alleges the reasons for the discipline set forth in the letter were false. Mr. Brogan then told plaintiff that she was being removed from her morning anchor position and her contract would not be renewed at the end of the year. Mr. Brogan gave her the options to either work as a reporter through the end of her contract or to leave immediately while still receiving her salary through the end of the year. Plaintiff alleges that "[o]n September 16, 2022, [she] was provided a letter of separation and was officially terminated on September 23, 2022." (*Id.* at PAGEID 78, ¶ 38).

Plaintiff filed this lawsuit on June 29, 2023, asserting the following claims against defendants: violation of the Equal Pay Act (EPA) (Count I); discrimination under the Age

4

Discrimination in Employment Act (ADEA) (Count II); ADEA retaliation (Count III); sex

discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count IV); Title VII

retaliation (Count V); age and sex discrimination under Ohio Revised Code § 4112.02(A) (Count

VI); retaliation under Ohio Revised Code § 4112.02(I) (Count VII); and aiding and abetting

unlawful discriminatory practices under Ohio Revised Code § 4112.02(J) (Count VIII).

## II.    Legal standard

To withstand a motion to dismiss, a complaint must comply with Rule 8(a), which

requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Rule 8(a)).  A complaint must include

sufficient facts to state a claim that is plausible on its face and not speculative.  *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Mere "labels and

conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice.

*Twombly*, 550 U.S. at 555.  In deciding a motion to dismiss under Rule 12(b)(6), the Court must

accept all factual allegations as true and make reasonable inferences in favor of the non-moving

party.  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420

F.3d 571, 575 (6th Cir. 2005)).

## III.    Analysis

Defendants' partial motion to dismiss plaintiff's amended complaint seeks to dismiss all

claims against E.W. Scripps and most claims against WCPO.  The Court begins with E.W.

Scripps.

A. <u>Claims Against Defendant E.W. Scripps</u>

Defendants argue that E.W. Scripps does not and never did employ plaintiff. In support of their motion, they attach plaintiff's employment contract with WCPO, which does not mention E.W. Scripps.[3] They further argue that plaintiff's amended complaint fails to allege any conduct by E.W. Scripps whatsoever. Plaintiff argues in response that E.W. Scripps is the parent company of WCPO, and the matter should be left open pending discovery. Plaintiff references three legal theories under which an entity that did not directly employ a plaintiff may nevertheless be held liable under federal employment laws.[4] In reply, defendants argue that plaintiff fails to plausibly invoke any of these theories even by way of legal conclusions—let alone factual allegations. Because these theories are not plausibly alleged in plaintiff's amended complaint, defendants argue, E.W. Scripps must be dismissed as a defendant.

"Title VII applies only to 'employers.'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 852 (6th Cir. 2017) (quoting 42 U.S.C. § 2000e-2; *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 611 (6th Cir. 2003)). Whether an entity is an employer under Title VII depends on "whether the alleged employer exercises control over the manner and means of the plaintiff's work." *Id.* (quoting *Sutherland*, 344 F.3d at 612). Such control may be demonstrated by an alleged employer's supervision of day-to-day activities, ability to hire or fire employees, management of work assignments, issuance of instructions, or "other activities commonly performed by employers." *Nelson v. Clermont Cnty. Veterans' Serv. Comm'n*, No. 1:11-cv-335, 2012 WL 893877, at *4 (S.D. Ohio Mar. 15, 2012).

---

[3] The Court may consider this contract without converting defendants' motion into a motion for summary judgment if it is "referred to in [the] complaint and central to the claim." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (citation omitted). Plaintiff's amended complaint references this contract (*see, e.g.*, Doc. 10 at PAGEID 69, ¶ 7; PAGEID 78, ¶ 37), and she does not contest the document or anything in it.
[4] Plaintiff references scenarios where two companies are so interrelated as to be considered joint employers; where one company so controls another's employees that it is considered the employer of those employees; and where an employer's status as an agent may impute liability for unlawful employment action to the principal.

In the context of parent and subsidiary companies, liability will not attach to the parent company absent "sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Anwar*, 876 F.3d at 852 (quoting *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir. 1983), *abrogated on other grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)). A "parent [company] is not responsible for a subsidiary's Title VII violations absent special circumstances." *Id.* (citing *Armbruster*, 711 F.2d at 1337).

In the description of the parties, plaintiff's amended complaint contains conclusory allegations that E.W. Scripps is an employer for purposes of the EPA, ADEA, and Ohio law (*see* Doc. 10 at PAGEID 68, ¶¶ 1, 3), which are repeated in the context of her Ohio law aiding and abetting claim (*see id.* at PAGEID 86, ¶ 91). Plaintiff has not alleged facts showing that E.W. Scripps supervised WCPO's employees, hired or fired WCPO employees, controlled their work assignments, or conducted other activities commonly performed by employers. Nor has plaintiff provided any information about E.W. Scripps' business or its interrelated operations with WCPO, including whether both retain common management. The fact that E.W. Scripps is the parent company of WCPO is not enough. *See Anwar*, 876 F.3d at 852.

To survive a motion to dismiss, plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff's amended complaint fails to provide *any* factual information that would support treating E.W. Scripps as her employer under any of the legal theories generally referenced in her response. Without a plausible basis under which E.W. Scripps could be held liable, plaintiff's amended complaint should be dismissed against E.W. Scripps on all

7

counts.  *See Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

B.  Claims Against Defendant WCPO[5]

1. EPA

WCPO argues that plaintiff cannot make out a claim for a willful violation of the EPA because plaintiff's amended complaint contains no allegations concerning WCPO's state of mind.  Plaintiff acknowledges that she has not alleged a willful violation of the EPA.  (*See* Doc. 20 at PAGEID 165).  Accordingly, plaintiff may not maintain a claim for a willful violation of the EPA, and her EPA claim is subject to the two-year statute of limitations governing non-willful violations.  *See Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 830 (6th Cir. 2019) (explaining that the Fair Labor Standards Act (FLSA)'s limitation period set forth in 29 U.S.C. § 255(a) applies to EPA claims).  Given plaintiff's concession on this matter, the Court recommends that plaintiff's EPA claim be allowed to proceed only on the theory of non-willful violations.

2. "Pattern and practice claim"

WCPO argues that, to the extent plaintiff seeks to assert a "pattern and practice claim," such a claim should be dismissed because it is reserved for class actions and actions brought by the government.  Plaintiff argues in response that her references to WCPO's patterns or practices are relevant to its discriminatory animus, and she concedes that she does not assert a standalone "pattern and practice claim."  Given plaintiff's representation, WCPO's motion to dismiss any "pattern and practice claim" should be denied as moot.

---

[5] The Court analyzes plaintiff's claims against defendant WCPO only as it is recommended that E.W. Scripps be dismissed as a defendant.

3. <u>Aiding and abetting claim</u>

WCPO also seeks dismissal of plaintiff's aiding and abetting claim under Ohio law.

Ohio Revised Code § 4112.02(J) provides that it is unlawful:

> For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

*Id.*

Plaintiff's aiding and abetting claim should be dismissed. As explained above, plaintiff's amended complaint fails to state a plausible claim that E.W. Scripps was her "employer." As such, WCPO is the only remaining defendant, and "[a] corporate entity may not aid and abet itself in discriminating against a plaintiff." *Brahmamdam v. TriHealth, Inc.*, No. 1:19-cv-152, 2022 WL 1539535, at *13 (S.D. Ohio May 16, 2022) (quoting *Glass v. Tradesmen Int'l, LLC*, 505 F. Supp. 3d 747, 762 (N.D. Ohio 2020)), *dismissed sub nom. Brahmamdam v. TriHealth G, LLC*, No. 22-3559, 2022 WL 18028357 (6th Cir. July 14, 2022). Therefore, WCPO's motion to dismiss plaintiff's Ohio Revised Code 4112.02(J) aiding and abetting claim should be granted.

4. <u>Discrimination claims (Counts II, IV, and VI)</u>

WCPO argues that plaintiff has failed to allege an adverse employment action or identify a similarly situated employee treated more favorably than her—both elements of a prima facie employment discrimination case. WCPO argues that mere discipline is not an adverse employment action as a matter of law, and the non-renewal of plaintiff's contract is not tantamount to her termination where there was no promise (contractual or otherwise) of renewal.[6] WCPO argues that plaintiff's amended complaint admits a series of documented

---

[6] WCPO argues that its decisions about the Bengals post-season on-site coverage in January and February of 2022 were not adverse actions as a matter of law and, in any event, such claims would be time-barred. Plaintiff concedes

performance issues preceding the non-renewal of her contract and that plaintiff fails to identify an employee with a similar performance record that was treated more favorably than her.

Plaintiff argues in response that her amended complaint alleges a series of negative disciplinary actions, culminating in her September 13, 2022 removal from her anchor position, which constitute adverse employment actions. Plaintiff further argues that non-renewal of an employment contract can rise to the level of an adverse employment action. Finally, plaintiff argues that she has alleged that AW had the same supervisor and performance standards as she did, yet AW—a substantially younger male—was not disciplined and his contract was renewed despite equivalent job performances.

In reply, WCPO argues that plaintiff has alleged, in effect, a lateral transfer as opposed to an actionable "materially adverse change in the terms and conditions of [her] employment." (Doc. 21 at PAGEID 181 (quoting *Swann v. Time Warner Ent.Co., L.P.*, 126 F. Supp. 3d 973, 983 (S.D. Ohio 2015))).

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual concerning her compensation, terms, conditions, or privileges of employment because of such individual's sex. 42 U.S.C. § 2000e-2(a)(1). The ADEA makes it unlawful to "discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Under Ohio law, it is unlawful "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to

_____

both positions. (*See* Doc. 20 at PAGEID 166-67). The Court therefore recommends that WCPO's motion to dismiss be denied as moot as it relates to any claims premised on WCPO's Bengals post-season on-site coverage decisions in January and February of 2022.

discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). Ohio courts analyze discrimination claims under Ohio law based on the same standards applicable to claims under federal law. *Fletcher v. U.S. Renal Care*, 709 F. App'x 347, 351 n.1 (6th Cir. 2017) (citing *Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 163 (6th Cir. 2004)) (in turn citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rts. Comm'n*, 421 N.E.2d 128, 131-32 (Ohio 1981)). *See Southall v. Ford Motor Co.*, 645 F. Supp. 3d 826, 833 (S.D. Ohio 2022) (noting that the Title VII prima facie discrimination case applies similarly to ADEA discrimination claims).

At the pleading stage, plaintiff need not plead facts alleging the elements of a prima facie case of discrimination under the *McDonnell Douglas* framework to state a claim for relief for employment discrimination. *See Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024) (citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)).[7] "The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). *See also Keys*, 684 F.3d at 609 (finding *Swierkiewicz's* holding remains good law after the Supreme Court's decisions in *Twombly* and *Iqbal*). At this early stage in the proceedings, the Court need only consider whether plaintiff's complaint sufficiently states a plausible claim for relief for purposes of Rule 12(b)(6) and not whether plaintiff has pled a prima facie case of discrimination based on indirect evidence. *Ogbonna-McGruder*, 91 F.4th at 842. "If a reasonable court can draw the necessary inference

---

[7] The *McDonnell Douglas* prima facie case of discrimination "requires that a plaintiff show (1) that she was a member of a protected class, (2) an adverse employment action, (3) that she was qualified for her position, and (4) that she was 'replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class.'" *Ogbonna-McGruder*, 91 F.4th at 842 (quoting *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 728-29 (6th Cir. 1999)).

from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys*, 684 F.3d at 610. Nevertheless, plaintiff "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that WCPO discriminated against her because of her gender or age. *Id.* (quoting *Iqbal*, 556 U.S. at 678-79).

a. *Adverse employment action*

Plaintiff argues that her September 13, 2022 receipt of the "Final Warning" letter and notification that her contract would not be renewed constitute adverse employment actions. WCPO argues that neither instance of negative discipline was an adverse employment action as a matter of law.

The Court finds that plaintiff has plausibly alleged that her September 13, 2022 discipline was an adverse action. As explained in *Edwards v. City of Cincinnati*, No. 1:22-cv-503, 2023 WL 145898 (S.D. Ohio Jan. 10, 2023):

> Discipline can amount to an adverse employment action if it affects the employee's opportunity for promotion or pay raises or moves an employee forward on a progressive discipline plan. *Kostic v. UPS, Inc.*, 532 F. Supp. 3d 513, 535 n.29 (M.D. Tenn. 2021). . . . A transfer or change in assignment can amount to an adverse action if it includes a less distinguished title, fewer opportunities for advancement, or other unique circumstances as judged in objective terms.

*Id.* at *3-4 (citing *Freeman v. Potter*, 200 F. App'x 439, 443 (6th Cir. 2006)).

At this stage in the proceedings, the Court is required to make all inferences in plaintiff's favor. Plaintiff alleges that—as a consequence of this discipline—she was removed from the morning show anchor position and told that her contract would not be renewed at the end of the year. (Doc. 10 at PAGEID 78, ¶ 37). These allegations allow the Court to plausibly infer that

12

plaintiff was no longer eligible for promotions or pay raises and had a less distinguished title in her unique field—material consequences to her career.

The Court also finds that plaintiff has plausibly alleged that the non-renewal of her contract was an adverse employment action. WCPO cites two out-of-circuit district court cases to support its position that "failing to renew a contract where no previous promise of continued employment was given is not an adverse employment action." (Doc. 15-1 at PAGEID 125-126). The Sixth Circuit, however, has held otherwise—explaining that the concept of adverse actions for purposes of employment law may include "discharge, demotions, refusal to hire, *nonrenewal of contracts*, and failure to promote." *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (emphasis added); *Jones v. City of Allen Park*, 167 F. App'x 398, 407 (6th Cir. 2006) (same) (citing *Thaddeus-X*). *See also Sexstella-Wright v. Sandusky City Sch. Dist.*, No. 1:05-cv-1136, 2006 WL 3526791, at *4 (N.D. Ohio Dec. 6, 2006) ("[N]on-renewal of an employment contract qualifies as an adverse employment action."), *aff'd sub nom. Sexstella-Wright v. Sandusky City Sch. Dist. Bd. of Educ.*, 258 F. App'x 837 (6th Cir. 2007); *Seals v. Bridgeport Spaulding Sch. Dist.*, No. 17-cv-13514, 2018 WL 4829475, at *4 (E.D. Mich. Oct. 4, 2018) ("[P]laintiff was subjected to a significant change in his employment status as a result of the [non-renewal of his employment contract].").

Plaintiff's allegations at this stage of the proceedings plausibly show that WCPO's September 13, 2022 discipline and non-renewal of her employment contract were adverse employment actions for purposes of plaintiff's discrimination claims.

b. *Similarly situated employees*

WCPO argues that plaintiff has failed to allege that AW—her identified comparator—had a comparable history of discipline issues. WCPO suggests that plaintiff fails to meet the

fourth element of the *McDonnell Douglas* prima facie case. Yet, as explained above, plaintiff

need not establish a prima facie case of discrimination at the pleadings stage. *Keys*, 684 F.3d at

610. The Court is bound to consider only the sufficiency of the pleadings.

Plaintiff's allegations at this juncture raise a plausible inference that she and AW were

similarly situated, and AW, a younger, male employee, received better treatment than plaintiff.

(*See, e.g.*, Doc. 10 at PAGEID 70, ¶ 11 (AW was plaintiff's co-anchor); PAGEID 76, ¶ 28

(coworkers expressed that plaintiff's "stumbles" were not any more common than other younger,

male news anchors); PAGEID 76, ¶¶ 30-31, 35, 37 (both plaintiff and AW welcomed weather

reporter back from COVID illness; reporter complained about both plaintiff and AW; both

plaintiff and AW were summoned to Fulmer's office; plaintiff was disciplined); PAGEID 81, ¶

52 ("AW reported to the same supervisor and was subject to the same performance standards as

[plaintiff]. He was not disciplined nor terminated from his employment for the same conduct

allegedly committed by [plaintiff]. . . .")).

Plaintiff's allegations that she was disciplined for conduct when her alleged younger,

male comparator was not raises a plausible inference of discrimination. The Court concludes

that plaintiff's allegations at this stage of the proceedings plausibly show that AW was a

similarly situated comparator for purposes of plaintiff's discrimination claims.

5. Retaliation claims (Counts III, V, and VII)[8]

---

[8] The Court analyzes all of plaintiff's retaliation claims using the same framework. *See Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 511 (6th Cir. 2016) (citing Ohio Rev. Code Ann. § 4112.02(I); 42 U.S.C. § 2000e-3(a).) ("Both Title VII and Ohio Rev. Code § 4112.02(I) contain a so-called opposition clause, under which employers may not retaliate against any employee that 'opposed' an unlawful practice."); *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) ("When a plaintiff presents only circumstantial evidence, we examine Title VII, ADEA, and Ohio state-law retaliation claims under the same *McDonnell Douglas/Burdine* evidentiary framework that is used to assess claims of discrimination."); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (citations omitted) ("We have explained that Title VII's anti-retaliation provision is similar in relevant respects to the ADEA's anti-retaliation provision, and that it is therefore appropriate to look to cases construing Title VII as a source of authority for interpreting the ADEA's anti-retaliation clause.").

WCPO first argues that plaintiff's retaliation claims fail because plaintiff fails to allege an adverse employment action. For the reasons explained above, and for the additional reason that an adverse employment action in the retaliation context is interpreted more broadly than in the discrimination context, this argument is not persuasive:

> In contrast to Title VII's discrimination provision, the "adverse employment action" requirement in the retaliation context is not limited to an employer's actions that affect the terms, conditions, or status of employment, or those acts that occur in the workplace. *See* [*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 62-67 (2006)]. The retaliation provision instead protects employees from conduct that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at [68] (internal quotation marks omitted).

*Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008).

WCPO otherwise argues that plaintiff fails to sufficiently allege that she engaged in protected activity. WCPO argues that plaintiff's action should be analyzed under the "opposition clause" of Title VII, under which employees enjoy "less protection" for their actions. *See id.* (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989)). WCPO argues that the alleged protected activity here—plaintiff's February 7, 2022 statement to Mr. Fulmer that its on-site coverage decision was made because she was "the wrong age, gender, or color" (Doc. 10 at PAGEID 71, ¶ 16) and references to that comment in subsequent conversations with Mr. Fulmer and other coworkers (*see id.* at PAGEID 72, ¶¶ 17-18)—is too vague to plausibly allege an affirmative act triggering protection under the "opposition clause" of Title VII. WCPO also argues that plaintiff does not plausibly allege that the alleged adverse employment action would not have occurred but for the alleged protected activity, as the adverse employment action alleged occurred approximately seven months after the alleged protected activity. Finally, WCPO contends that plaintiff has not sufficiently alleged that her February 7, 2022 comments reflected a reasonable, good faith belief that WCPO violated discrimination

15

laws. *See Glasstetter v. Rehab Servs. Comm'n*, No. 2:07-cv-125, 2010 WL 2465356, at *10 (S. D. Ohio June 14, 2010) (explaining that opposition activity must be based on both a reasonable and good faith belief that an employer's practice is unlawful). WCPO argues that plaintiff's opposition activity was merely a "sarcastic barb" to her coworkers. (Doc. 21 at PAGEID 186).

Plaintiff concedes that her alleged protected activity should be analyzed under Title VII's "opposition clause" and that opposition activity "cannot be merely a vague charge of discrimination." (Doc. 20 at PAGEID 172-73). Plaintiff argues, however, that opposition activity need not "be lodged with absolute formality, clarity, or precision[,]" *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 631 (6th Cir. 2013), and may include "complaining to . . . management [and] other employees . . . about allegedly unlawful practices[,]" *Niswander*, 529 F.3d at 721 (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000)). Plaintiff also argues that she has plausibly pleaded a causal connection because despite the time lapse between her alleged opposition activity and the alleged adverse employment action, WCPO took the first available opportunity (her regularly scheduled quarterly personnel evaluation in March 2022) to raise criticisms never before raised in her 27-career with WCPO. (*See* Doc. 10 at PAGEID 73-74, ¶¶ 21-22).

To state a retaliation claim, a plaintiff must allege that "(1) she engaged in protected activity; (2) her exercise of that activity was known by the Defendant; (3) the Defendant thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action." *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019) (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)). "[T]he alleged discriminatory acts need not be actually illegal in order for the opposition clause to apply[,]" *Johnson*, 215 F.3d at 580, but the plaintiff must have a reasonable, good faith belief

that the defendant has committed an unlawful employment practice to state a retaliation claim. *See id.* at 579. The "reasonable, good faith belief" requirement "includes objective and subjective components: the employee [who engaged in opposition activity] must 'actually believe[ ] that the conduct complained of constituted a violation of relevant law,' and 'a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee' would believe that the conduct complained of was unlawful." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015) (second alteration in original) (quoting *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 811 (6th Cir. 2015) (internal quotation marks omitted) (interpreting the reasonable-belief requirement of the Sarbanes-Oxley Act's anti-retaliation provision)). Because this is a fact-dependent inquiry, it is only suitable for disposition as a matter of law "when no reasonable person could have believed that the facts known to the employee amounted to a violation or otherwise justified the employee's belief that illegal conduct was occurring." *Id.* (quoting *Rhinehimer*, 787 F.3d at 811).

Liberally construed, plaintiff's complaint states a plausible retaliation claim based on affirmative opposition activity. Plaintiff alleges that she complained to Mr. Fulmer in February 2022 about WCPO's Bengals on-site coverage decision by remarking, "am I the wrong age, gender, or color[?]" (Doc. 10 at PAGEID 71, ¶ 16). Mr. Fulmer "frowned at her, rolled his eyes, and walked away" without otherwise responding. (*Id.*). In the weeks shortly thereafter, when coworkers asked plaintiff about this decision, she repeated this complaint. (*See id.* at PAGEID 72, ¶ 17). Mr. Fulmer then confronted plaintiff about voicing her complaint to her coworkers. (*Id.* at ¶ 18). Plaintiff then alerted her union representative about these concerns, and he suggested he bring the matter to WCPO's General Manager's attention. Approximately six

17

weeks later, at plaintiff's March 2022 performance review, she received "false" criticisms of her performance for the first time in her 27 year history with WCPO. (*See id.* at PAGEID 73, ¶ 21). Plaintiff's remark—"am I the wrong age, gender, or color"—must be viewed in the context of plaintiff's subsequent communications with her coworkers, Mr. Fulmer's confrontation with plaintiff, and plaintiff's first negative performance evaluation in her 27 year tenure with WCPO. Plaintiff's statements to Mr. Fulmer and her coworkers were not vague and sufficiently allege opposition activity.

WCPO cites several cases to support its argument that plaintiff's alleged, affirmative opposition activity was too vague to be actionable. These cases are distinguishable, however, both on their procedural postures and facts. *See Fox v. Eagle Distrib. Co.*, 510 F.3d at 592 (appeal of summary judgment) (alleged opposition activity was not specifically tied to alleged unlawful employment practices); *Booker*, 879 F.2d at 1313-14 (appeal of summary judgment) (alleged opposition activity referenced conduct by a particular fellow employee as opposed to the plaintiff's employer and otherwise referenced "ethnocism" generally, which the court found to be overly vague); *E.E.O.C. v. Unitrin Specialty*, No. 3:06-cv-302, 2008 WL 4372680, at *11 (S.D. Ohio Sept. 22, 2008) (summary judgment) (a reference to a job candidate's age, in and of itself, was too vague to be considered opposition activity).[9]

---

[9] WCPO also cites two out-of-district cases for the proposition that opposition activity that generally invokes multiple types of discrimination is not actionable, but neither case persuades the Court that dismissal is appropriate here. In *Burgin v. Sitel Corp.*, No. CV 06-AR-1508-S, 2008 WL 11422153 (N.D. Ala. May 14, 2008), the court remarked that the plaintiff "claim[ed] several varieties of discrimination without telling the court which is her best claim. . . ." *Id.* at *3. But in *Burgin*, the defendant conceded the plaintiff's protected activity. *Id.* at *11; *see also id.* at *3 (the court noting that the defendant's motion for summary judgment did "not complain of the enigma [the plaintiff] present[ed] with the scattergun complaint"). In *Malladi v. Principi*, No. 3:03-cv-00633, 2006 WL 2709621 (M.D. Ala. Sept. 19, 2006), *aff'd sub nom. United States v. Ponder*, 150 F.3d 1197 (11th Cir. 1998), the plaintiff had filed a prior lawsuit in which he had asserted "scores of claims . . . under almost every theory she and her attorneys could undercover or imagine. . . ." *Id.* at *4 (M.D. Ala. Sept. 19, 2006) (quoting *Malladi v. Brown*, 987 F. Supp. 893, 900 (M.D. Ala. 1997)). The court quoted from the opinion in the prior lawsuit, stating that "surely [the plaintiff] and her attorneys know that she has not been the victim of race, sex, national origin, and handicap discrimination simultaneously for almost every adverse employment decision at the VA." *Id.* (quoting

WCPO also cites the undersigned's decision in *Roper v. City of Cincinnati Fire Dep't*, No. 1:18-cv-901, 2019 WL 4454421, at *5 (S.D. Ohio July 12, 2019) (report and recommendation), *adopted*, 2019 WL 4453854 (S.D. Ohio Sept. 17, 2019), which did consider a retaliation claim at the pleadings stage. The decision in that case, however, turned on a unique factual situation in which the plaintiff did not have an objectively reasonable belief that the employer acted unlawfully; it is easily distinguishable from the factual allegations here. *Id.* at *5.

Plaintiff also sufficiently alleges that she had a reasonable, good faith belief that WCPO had engaged in unlawful discrimination. The Court cannot say that "no reasonable person could have believed that the facts known to the employee amounted to a violation or otherwise justified the employee's belief that illegal conduct was occurring." *Yazdian*, 793 F.3d at 646. As such, the Court leaves the question of whether plaintiff's belief was reasonable and held in good faith for the factfinder. *Johnson*, 215 F.3d at 579-80.

WCPO's final argument is that plaintiff has not plausibly alleged that the adverse employment action would not have occurred "but for" her protected activity. Both Title VII and ADEA private-sector retaliation claims require a plaintiff to show that protected opposition activity was the "but-for cause" of the adverse employment action. *See Barta v. Austin*, No. 2:20-cv-1641, 2022 WL 1749051, at *4 (S.D. Ohio Mar. 18, 2022) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) and *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351-52 (2013)). WCPO points to *Hurt v. Norfolk S. Ry. Co.*, No. 1:17-cv-542, 2020 WL

*Malladi v. Brown*, 987 F. Supp. at 900). That is a far cry from what is alleged here, and neither *Malladi* opinion directly considered whether the plaintiff's alleged protected activity was overly vague.

WCPO also cites *Schmalz v. Northrop Grumman Corp.*, No. 3:11-cv-145, 2012 WL 1813095 (S.D. Ohio May 17, 2012), *aff'd*, No. 12-3731 (6th Cir. Oct. 21, 2013), in which the plaintiff stated that she told her supervisor that "his behavior made her uncomfortable." *Id.* at * 12. The *Schmalz* court, however, does not appear to have decided whether this was protected activity—deciding only that the comment was "deficient to establish any causation." *Id.*

5308821, at *8 (S.D. Ohio Sept. 4, 2020).  WCPO argues that in *Hurt*, the temporal proximity

(four months) between the plaintiff's agreement to testify in a coworker's discrimination claim

and his termination did not, in and of itself, show causation; and a longer temporal period is at

issue here.

In response, plaintiff argues that a longer temporal period (such as the approximately

seven months alleged here) between the protected activity and adverse employment action may

raise a plausible inference of causation when supported by other factual allegations.  *See*

*Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 666 (6th Cir. 2020)

(temporal proximity accompanied by circumstantial evidence of retaliatory conduct satisfied the

but-for causation element of the plaintiff's retaliation claim).  Plaintiff argues that her amended

complaint alleges such additional context.

The Court finds that plaintiff has plausibly alleged the requisite causation at this stage of

the proceedings.  Although approximately seven months elapsed between the alleged protected

activity and adverse employment action, plaintiff alleges that only several weeks after her

protected activity, at her regularly scheduled quarterly personnel evaluation in March 2022,

supervisors raised criticisms never before raised in her 27-career with WCPO.  (*See* Doc. 10 at

PAGEID 73-74, ¶¶ 21-22).  Plaintiff also alleges that a subsequent HR meeting focused on these

minor criticisms, which was unprecedented.  (*See id.* at PAGEID 76, ¶ 28).  The Court concludes

that plaintiff's allegations are sufficient to warrant further factual development on the question of

causation.  *See Patterson v. N. Cent. Tel. Co-op. Corp.*, No. 2:11-cv-00115, 2014 WL 5322937,

at *12 (M.D. Tenn. Oct. 17, 2014) ("[A]ctual but-for causation is a question of fact for the jury. .

. .").

20

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Defendants' partial motion to dismiss (Doc. 15) be **GRANTED in part** and **DENIED**

**in part** as explained herein.

Karen L. Litkovitz
Chief United States Magistrate Judge

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JULIE O'NEILL,                                             Case No. 1:23-cv-410
     Plaintiff,                                    McFarland, J.
                                                          Litkovitz, M.J.

     vs.

SCRIPPS MEDIA, Inc. d/b/a
WCPO-TV, et al.
     Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being served with a copy thereof.  This period may be extended further by the Court on timely motion by either side for an extension of time.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).